# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE WESLEY WELLS,<br><br>   Petitioner,<br><br> v.<br><br>JAMES D. HARTLEY,<br><br>   Respondent. | ) 1:09-CV-01132 LJO JMD HC<br>)<br>) FINDINGS AND RECOMMENDATIONS<br>) REGARDING PETITION FOR WRIT OF<br>) HABEAS CORPUS<br>)<br>)<br>)<br>) OBJECTIONS DUE WITHIN THIRTY (30)<br>) DAYS |

  George Wesley Wells (hereinafter "Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

  Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 1992 conviction for second degree murder. The trial court sentenced Petitioner to a prison term of eighteen years to life. Petitioner is not currently challenging his conviction; rather, the instant petition challenges the decision by the California Board of Parole Hearings (the "Board") to deny Petitioner parole. Petitioner appeared before the Board on September 23, 2008.

  On December 1, 2008, Petitioner filed a petition for writ of habeas corpus with the Los Angeles County Superior Court challenging the Board's decision. (*See* Resp't Answer Ex. 2.) The Superior Court issued a reasoned opinion denying the petition on February 4, 2009. (*See* Resp't Answer Ex. 3.)

1    Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal
2 and the California Supreme Court.  (Resp't Answer Exs. 4, 6.)  The California Court of Appeal
3 denied the petition with a citation to *In re Lawrence*, 44 Cal. 4th 1181, 1214, 1228 (2008) and *In re*
4 *Shaputis*, 44 Cal. 4th 1241, 1260 (2008).  (Resp't Answer Ex. 5.)  The California Supreme Court
5 issued a summary denial of the petition.  (*See* Resp't Answer Ex. 7.)
6    On June 25, 2009, Petitioner filed the instant federal petition for writ of habeas corpus.
7 Respondent filed a response to the petition on December 4, 2009, to which Petitioner filed a traverse
8 on December 23, 2009.

## FACTUAL BACKGROUND

10   Petitioner was convicted of second degree murder, relating to the shooting of his estranged
11 wife, Cheryl.  (Tr. Parole Hearing at 9-10.)  On the day of the murder, Cheryl came over to
12 Petitioner's residence with the couple's fifteen month old son.  (Id. at 9).  Petitioner and Cheryl
13 conversed about a possible reconciliation and had sexual intercourse.  Afterwards, the couple became
14 embroiled in an argument after Cheryl suggested that she might take another man to a concert.  (Id. at
15 9-10.)  The argument ended when Cheryl commented that Petitioner and his parents would not be
16 able to see their son.  (Id. at 12.)  Petitioner then walked from where Cheryl and he had been arguing
17 through the living room to a linen closet where he stored a handgun.  (Id. at 18.)  Petitioner retrieved
18 his handgun and shot Cheryl twice in the back.  Petitioner's son was still in the next room when he
19 shot Cheryl.  Petitioner then disposed of Cheryl's body in a different location.
20   Petitioner's pre-incarceration record reveals that he had been convicted of domestic abuse,
21 pertaining to a physical altercation with Cheryl in which she sustained several broken ribs.  (Id. at
22 27.)  Petitioner admits Cheryl's injuries resulted from him kicking her.  (Id. at 60.)  Petitioner further
23 admits that he had abused a girlfriend, Brenda, prior to Cheryl.  (Id. at 23.)
24   Petitioner comes from a stable family with two siblings.  (Id. at 30-31.)  Petitioner finished
25 high school and had taken several courses in junior college.  (Id. at 31).  At the time of the
26 commitment offense, Petitioner worked for the postal service with a side job in catering.  Petitioner's
27 family wrote letters in support of his release, including multiple offers of residences and
28 employment.  (Id. at 39-44.)

1  Petitioner has programmed well in prison, with no disciplinary violations. (Id. at 36.)
2  Petitioner has participated in Narcotics and Alcoholics Anonymous, as well as numerous other self-
3  help programming. (Id. at 37-38.) The psychological evaluation, dated August 2007, classified
4  Petitioner as being in the low range regarding likelihood of violence. (Id. at 46-48.)

## DISCUSSION

### I.   Jurisdiction

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. Petitioner is currently incarcerated at Avenal State Prison, which is located in Kings County. As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

### II.   AEDPA Standard of Review

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of AEDPA and is consequently governed by its provisions. *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1))*, overruled in part on other grounds*, *Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.

\\\

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. *See Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) *overruled in part on other grounds*, *Hayward*, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id*. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

\\\
\\\
\\\

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents"); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue....This does not mean that Ninth Circuit caselaw is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'"). Furthermore, the AEDPA requires that the Court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the Los Angeles County Superior Court, the California Court of Appeal, and the California Supreme Court reached the merits of Petitioner's claims. The California Supreme Court's decision was a summary denial. The California Court of Appeal's decision merely cited to *In re Lawrence* and *In re Shaputis* in denying the petition. The Court finds the decision by

the Court of Appeal to be an ambiguous decision. Thus, the Court looks through the decisions by the California Supreme Court and the California Court of Appeal to the last reasoned decision; namely, that of the Los Angeles County Superior Court. *See Nunnemaker*, 501 U.S. at 804.

### III. Review of Petitioner's Claims

The petition for writ of habeas corpus sets forth four grounds for relief, which all contend that Petitioner's due process rights were violated by the Board's denial of parole. In his first ground for relief, Petitioner contends that a denial based on unchanging factors violates his due process rights. Petitioner additionally alleges that the Board's finding that he required additional insight into the crime was not supported by the psychological report. In his third ground for relief, Petitioner argues that California precedents, namely *In re Shaputis* and *In re Lawrence*, entitles him to relief. Lastly, Petitioner contends that he was denied a neutral and unbiased decision.

#### *A. Legal Standard for Denial of Parole*

The Court analyzes Petitioner's due process claims in two steps: "the first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). Respondent argues that Petitioner does not have a federally protected liberty interest in parole. (Resp't Answer at 2.) The Ninth Circuit Court of Appeals has recognized that "[i]f there is any right to be release on parole, or to release in the absence of some evidence of future dangerousness, it has to arise from substantive state law creating a right to release." *Hayward*, 603 F.3d at 555. The Ninth Circuit further recognized that "[t]here is no general federal constitutional 'some evidence' requirement for denial of parole, in the absence of state law creating an enforceable right to parole." *Id*. at 559. The *Hayward* court's finding, that there exists no free standing federal due process right to parole or the federal right to some evidence of current dangerousness, contained the consistent and continual caveat that state law may in fact give rise to federal protection for those rights. As the Ninth Circuit later reiterated, "state created rights may give rise to liberty interests that may be enforced as a matter of federal law." *Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam) (citing *Wilkinson v. Austin*, 545

U.S. 209, 221 (2005)). The *Pearson* court found that, "*Hayward* necessarily held that compliance with state requirement is mandated by federal law, specifically the Due Process Clause" as "[t]he principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long-established." *Id.*

The next question is whether California's parole scheme gives rise to a liberty interest enforced as a matter of federal law. The Ninth Circuit has definitively concluded that "California has created a parole system that independently requires the enforcement of certain procedural and substantive rights, including the right to parole absent 'some evidence' of current dangerousness." *Id.* at 611 (citing *Hayward*, 603 F.3d at 562); *see also Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010) (noting that "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state"). Consequently, the inquiry that a federal habeas court must undertake in determining whether the denial of parole comports with the requirement of federal due process is "whether the California judicial decision approving the governor's [or parole board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(1)-(2)) (footnotes omitted).

### B.     *State Court Decision*

Thus, the Court now examines whether the Los Angeles County Superior Court's decision was an unreasonable application of the California some evidence standard. The Superior Court found that the Board's decision was based on several factors, including the commitment offense, Petitioner's lack of emotion at the hearing, and Petitioner's history of unstable or tumultuous relationships with others. (Resp't Answer Ex. 3 at 1-2.) The Los Angles County Superior Court concluded that, "Petitioner's unstable social history, in conjunction with the gravity of the commitment offense and his lack of remorse is some evidence that he remains an unseasonable risk of danger to society." (Id. at 2.) The Court does not find this to be an unreasonable application of the California some evidence standard.

\\\

\\\

1    The Court initially notes that the Los Angeles County Superior Court applied the correct
2 standard of review. As the California Supreme Court held in *Lawrence* that, "[t]he relevant
3 determination for the Board and the Governor is, and always has been, an individualized assessment
4 of the continuing danger and risk to public safety posed by the inmate." *In re Lawrence*, 44 Cal. 4th.
5 at 1227 (noting that "mere recitation of the circumstances of the commitment offense, absent
6 articulation of a rational nexus between those facts and current dangerousness, fails to provide the
7 required "modicum of evidence" of unsuitability"). The Ninth Circuit reiterated this principle,
8 stating that "a reviewing court must consider 'whether the identified facts are *probative* to the central
9 issue of *current* dangerousness when considered in light of the full record before the Board or the
10 Governor.'" *Cooke*, 606 F.3d at 1214 (emphasis in original) (quoting *In re Lawrence*, 44 Cal. 4th at
11 1221). As the Ninth Circuit observed in *Cooke*:

12   Under California law, "the paramount consideration for both the Board and the Governor" must be "whether the inmate currently poses a threat to public safety and
13   thus may not be released on parole,"[citation], and "the facts relied upon by the Board or the Governor [must] support the ultimate decision that the inmate remains a threat
14   to public safety.

15 *Id*. (quoting *In re Lawrence*, 44 Cal. 4th at 1210, 1213); *see also* Cal. Code Regs. tit. 15, § 2402(a)
16 ("[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if
17 released from prison," the prisoner must be found unsuitable and denied parole).
18    The Superior Court articulated how Petitioner's commitment offense, his unstable social
19 history, and his lack of insight evidenced Petitioner's current dangerousness. The Superior Court
20 acknowledged that immutable factors, such as the heinousness of the crime, were only "relevant if it
21 is indicative of the 'ultimate conclusion that an inmate continues to pose an unreasonable risk to
22 public safety.'" (Id. at 1) (quoting *In re Shaputis*, 44 Cal. 4th at 1255). However, the Superior Court
23 observed that "[b]ecause the crime is still relatively recent, there is still a nexus between the gravity
24 of the crime and the current dangerousness of its perpetrator." (Id. at 2.) The commitment offense
25 occurred in September 1991 while the parole hearing occurred in September 2008; thus, seventeen
26 years had passed since the commitment offense, which is less than Petitioner's minimum sentence.[1]

27
28   [1] Petitioner's minimum sentence is eighteen years, which is obviously different than Petitioner's minimum eligible parole date.

The Superior Court went on to discuss the Board's reliance on Petitioner's psychological and mental attitude, noting that "[Petitioner's] lack of emotion indicates a lack of remorse. An inmate's lack of remorse or insight into the nature and magnitude of the offense may be some evidence that he currently poses an unreasonable risk of danger to society." (Id.) The Board had personally observed Petitioner during the hearing and their observations lead them to the conclusion that:

> [R]eally what weighs very heavily in the Panel's mind today, aside from the crime which we acknowledge never changes . . . what weighs very heavily in our minds today is insight. More specifically, your lack of insight. And I want to talk about that a little bit because we talked about it during the hearing, and I know that you feel that you have pretty good insight. I will acknowledge that your psychiatric report is a very good report, it says that you have a low likelihood of violent recidivism. But let me talk about what we see and what we felt about your insight. Your relationship was horrid and tumultuous. The crime was horrible and tumultuous. You state that you were, as in previously, you used to be a controlling person. We disagree. We feel you are a controlling person . . . I've worked with a lot of convicts over the years, and you present yourself, you're very controlled, your demeanor, your posture, your tone of voice, your carefully chosen words, all indicate that you are very much into controlling what we see. You want us to see what you think we want to see . . . what we didn't see from you today at all is any emotion. Nothing.

(Tr. Parole Hearing at 88-90.)[2]

The Superior Court's reliance on Petitioner's lack of insight is objectively reasonable. Petitioner argues that the Board's finding that Petitioner lacked insight and remorse is without evidence, pointing to his favorable psychological reports as evidence that he has insight and remorse. As illustrated by the above passage, the Board noted and considered the psychological reports. However, the Board found their own personal observations of Petitioner's demeanor at the hearing more persuasive. As the California Supreme Court enunciated in *In re Shaputis*, a reviewing court will affirm the Board's "interpretation of the evidence so long as that interpretation is reasonable and reflects due consideration of all relevant statutory factors." *In re Shaputis*, 44 Cal. 4th at 1258 (citing *In re Rosenkrantz*, 29 Cal. 4th 616, 656-658, 660-661 (2002)).

The Superior Court noted that Petitioner's unstable social history also evidenced current dangerousness. The Superior Court's reliance on this factor is not erroneous as California regulations label an unstable social history as a factor tending to show unsuitability for parole,

---

[2] Petitioner claims that these remarks by the Board evidence bias against Petitioner. Petitioner seems to be arguing that the Board's expression of personal feelings or opinions during the proceedings constitutes bias. The Court rejects this argument as the Board's remark did not express any inappropriate sentiments that may be construed as bias against Petitioner.

defining an unstable social history as "[t]he prisoner has a history of unstable or tumultuous relationships with others." Cal. Code Regs. tit. 15, § 2402(c)(3). As noted by the California courts, "an inmate's unstable social history, like his commitment offense, is an 'immutable' fact, and thus insufficient by itself to prove unsuitability." *In re Shipman*, 110 Cal. Rptr. 3d 326, 335 (Cal. Ct. App. 2010). Here, Petitioner's unstable social history is directly related to the commitment offense and his lack of remorse. The Superior Court noted that Petitioner had beaten his estranged wife on several previous occasions and had admitted to beating a former girlfriend. Petitioner admitted that his violence towards women was motivated by a desire to control them. (Tr. Parole Hearing at 23.) The Board observed that Petitioner's inability to express emotion and his lack of insight was connected to Petitioner's control issues. Furthermore, Petitioner's demeanor rendered his commitment offense probative of the current dangerousness. As the California Supreme Court stated:

> the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety

*In re Lawrence*, 44 Cal. 4th at 1211.

Here, the Superior Court's finding that Petitioner's current demeanor rendered the immutable factors, namely the commitment offense and unstable society history, probative of current dangerousness was not objectively unreasonable in light of *Lawrence*. As the Superior Court's decision was not objectively unreasonable, Petitioner is not entitled to habeas corpus relief.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule

304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 28, 2010**                       **/s/ John M. Dixon**
                                                 UNITED STATES MAGISTRATE JUDGE